UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EDWARD ENOCH and MTB&E, LLC, )<br>)<br>Plaintiffs/Counter-Defendants, )<br>)<br>v. )<br>)<br>SHIRLEY SUMNER ENOCH, STAMPS )<br>QUARTET, INC., and FRANCES SUMNER )<br>DUNN, )<br>)<br>Defendants/Counter-Plaintiffs. ) | Case No. 3:04-0920<br>Judge Trauger |

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment filed by the defendants, (Docket No. 28 at 1[1]), to which the plaintiffs have responded (Docket No. 39), and the defendants have replied (Docket No. 44). For the reasons discussed herein, the defendants' motion will be denied.

---

[1]The defendants' Motion for Summary Judgment, their Statement of Undisputed Facts, their Memorandum in Support of Motion for Summary Judgment, and their Notices of Filing Depositions all are docketed as document number 28.

1

## **FACTUAL BACKGROUND and PROCEDURAL HISTORY**[2]

Plaintiffs Edward Enoch and MTB&E, LLC ("MTB&E"),[3] a corporation of which Mr. Enoch is the manager,[4] seek a declaratory judgment that they are the rightful owners of the trademark "The Stamps Quartet." Mr. Enoch was married to Shirley Sumner Enoch, one of the defendants in this case, from 1970 to 1980. (*See* Docket No. 11 ¶ 22) During approximately that time, as well as from 1990 through 1998, Mr. Enoch performed and recorded songs with a gospel music group, entitled "J.D. Sumner and the Stamps Quartet," that included Ms. Enoch's father, J.D. Sumner.[5]

In 1963, J.D. Sumner helped to form "The Stamps Quartet, Inc.," which is the corporate defendant in this case. According to the defendants, in 1976, Mr. Sumner became the sole holder of all interest in this corporation. (Docket No. 11 ¶¶ 14, 17) During his time performing with "J.D. Sumner and the Stamps Quartet," Mr. Enoch was an employee of "The Stamps Quartet, Inc."

On May 23, 1993, J.D. Sumner executed a last will and testament. A concurrently executed and attached Living Trust Agreement purported to give Mr. Sumner's grandson, Jason

---

[2]Unless otherwise noted, all facts have been drawn from the plaintiffs' Complaint for Declaratory Judgment (Docket No. 1), their Memorandum in Opposition to the Defendant's Motion for Summary Judgment (Docket No. 39), their Statement of Undisputed Material Facts (Docket No. 41), and their Response to Defendants' Statement of Undisputed Facts (Docket No. 43).

[3]The Tennessee Department of Revenue revoked MTB&E's articles of incorporation on October 14, 2003. The articles were reinstated, however, on January 23, 2006.

[4]Mr. Enoch, in his pleadings, is described only as "the manager" of MTB&E. (*See* Docket No. 39 at 1) While he never specifies the scope of these managerial duties, some details are provided in his deposition, which indicates that he serves as MTB&E's president. (*See* Docket No. 28, attached Edward Enoch Dep. at 51 (describing MTB&E as "my corporation that I run all my business through"))

[5]Ms. Enoch's sister, Frances Sumner Dunn, is another of the defendants in this case.

Enoch, all right, title, and interest in "The Stamps Quartet, Inc." In 1998, Mr. Sumner executed another Living Trust Agreement. This agreement indicated that these same rights should be given to Shirley Sumner Enoch. In the event of Ms. Sumner's death, this latter agreement specified that all right, title, and interest was to be divided between Jason Enoch and Kathy Hall, another of Mr. Sumner's grandchildren. (*See* Docket No. 44, attached 1998 Living Trust Agreement at 3) The defendants also have produced an undated, unsigned document in which Jason Enoch apparently conveys to Shirley Sumner Enoch "any and all right, title, or interest which I may have or may ever [have] had in The Stamps Quartet, Inc." (*See* Docket No. 44, attached Sale and Conveyance)

Mr. Sumner died on November 16, 1998. Following his death, Shirley Sumner Enoch, whose position with The Stamps Quartet, Inc. is disputed but who, according to the plaintiffs, at least had the authority to "close up the group," informed the group's touring members that she was taking the group "off the road." (*See* Docket No. 43 ¶¶ 17-18) In 2003, Edward Enoch began using the trademark "The Stamps Quartet" for "entertainment services in the nature of live performances by a musical group."[6] (*See* Docket No. 39 at 2) The plaintiffs continue to use this trademark at present. According to the defendants, they do as well. (*See* Docket No. 28 at 12)

On December 19, 2003, counsel for Shirley Sumner Enoch and Frances Sumner Dunn sent Mr. Enoch a cease a desist letter, demanding that he cease use of the trademark "The Stamps Quartet," noting that Ms. Enoch and Ms. Dunn intended to challenge in court any issuance of a trademark by the United States Patent and Trademark Office ("PTO") to Mr. Enoch, and advising him to contact them if he desired to negotiate a license for the trademark's use. (*See* Docket No.

---

[6]The plaintiffs do not specify whether Edward Enoch was using the trademark in his own name or through his position with MTB&E. The trademark was later registered, however, in the name of MTB&E alone. Additionally, Mr. Enoch asserts a right to use the trademark "via his position with the group and the company." (*See* Docket No. 43 ¶ 22)

3

1, Ex. A)  Counsel purporting to represent only Shirley Sumner Enoch sent a similar letter on March 24, 2004, this time to counsel for both Mr. Enoch and MTB&E.  (*See id.*, Ex. B)  On September 9, 2004, counsel again purporting to represent only Ms. Enoch sent a cease and desist letter to counsel for Mr. Enoch, with no mention of MTB&E.  (*See id.*, Ex. C)

The defendants at one time filed an application with the PTO to register the trademark "The Stamps Quartet," but they later abandoned it.  MTB&E subsequently applied for the same trademark.  Its application was uncontested by the defendants, and the trademark's registration was granted to MTB&E on July 26, 2005.

On October 12, 2004, the plaintiffs filed their Complaint for Declaratory Judgment.  The defendants counterclaimed on November 1, 2004, seeking a declaratory judgment stating that, among other things, the plaintiffs had infringed on their trademark and engaged in unfair competition. (*See* Docket No. 11 at 4)  The defendants, on December 1, 2005, moved for summary judgment on the plaintiffs' efforts to secure a declaratory judgment.  (*See* Docket No. 28 at 1)

## ANALYSIS

### I. Although MTB&E has Standing to Bring Suit, Edward Enoch Does Not

The defendants claim that both the corporate plaintiff, MTB&E, and the individual one, Edward Enoch, lack standing to bring suit.  While their first claim is incorrect, their second one has merit.

The defendants base their argument that MTB&E lacks standing on uncontroverted evidence that the corporation's articles of incorporation were revoked on October 13, 2003.  (*See* Docket No. 42 ¶ 23)  Although potentially persuasive under other circumstances, the effects of

4

this revocation were negated by the reinstatement of the articles on January 23, 2006, which renewed the corporation's ability to bring suit. *See* T.C.A. § 48-24-203 (2005) ("When the reinstatement is effective, it relates back to and takes effect as of the effective date of the administrative dissolution, and the corporation resumes carrying on its business as if the administrative dissolution had never occurred."); *Blaylock & Brown Constr. Co. v. Collierville Bd. of Mayor & Alderman*, 23 S.W.3d 316, 323 (Tenn. Ct. App. 1999), *permission to appeal denied*, June 19, 2000.

Tennessee courts have clearly indicated that this renewed capacity can cure a defect in standing that existed at the time a corporation or other such entity filed suit. For instance, in *Blaylock*, a homeowner's association that lost its corporate status in 1990 due to administrative dissolution appealed, in 1997, a Health Department permit that allowed the defendant to operate an incinerator. *See id.* at 318, 323. Approximately two months after it filed suit, the association's corporate status was reinstated. *See id.* at 324. The Court of Appeals ultimately upheld the association's power to bring such a suit, finding that "the reinstatement of the Homeowner's Association's corporate status effectively restored its capacity to pursue its appeal . . . ." *See id.* at 323. Additionally, in *Grand Valley Lakes Prop. Owners Assoc. v. Cary*, the Court of Appeals upheld an association's standing to file suit, despite the fact that its corporate charter, which had been revoked two years prior, was not reinstated until thirteen days after its filing. 897 S.W.2d 262, 268-69 (Tenn. Ct. App. 1994), *permission to appeal denied*, Jan. 3, 1995.

Here, the plaintiff's corporate status was not reinstated until approximately fifteen months after it brought suit in this court. The defendants have not cited–and the court's own research has not revealed–any evidence that the comparatively longer time between the plaintiff's filing and their renewal of corporate status, as compared to the shorter time periods at issue in *Blaylock* and

5

*Grand Valley Lakes*, should influence the plaintiff's standing to bring suit. Accordingly, like the plaintiffs in *Blaylock* and *Grand Valley Lakes*, MTB&E has standing to bring suit in this court.

The defendants allege that Edward Enoch lacks individual standing because he is merely "the manager of a non-existent limited liability company," who has "no interest other than through the LLC." (*See* Docket No. 28 at 4-6) In order to prove that he has standing to seek a declaratory judgment, Mr. Enoch must show that he is an "interested party" whose legal rights are at issue in a "case of actual controversy." *See* 28 U.S.C. § 2201(a) (2000); *Quintero v. McWherter*, No. 94-5714, 1995 WL 27423, at * 1 (6th Cir. Jan. 24, 1995) (unpublished); *Reardon v. Pa.-N.Y. Cent. Transp. Co.*, 323 F. Supp. 598, 599 (N.D. Ohio 1971) ("It is generally held that all persons who have an interest in an actual controversy which is the subject matter of a complaint for declaratory judgment may be joined as parties . . . .").

Other than asserting that he "has in interest in the mark via his position with the group and the company" (*see* Docket No. 43 ¶ 22), Mr. Enoch has not specified how MTB&E's standing as a corporate entity lends him standing to bring suit as an individual. *See Schlater v. Haynie*, 833 S.w.2d 919. 925 (Tenn. Ct. App. 1991) (noting the presumption that, under Tennessee law, a corporation is a "distinct entity, separate from its . . . officers [or] directors"). Particularly given the fact that, as Mr. Enoch admits, the trademark "The Stamps Quartet" is registered only to MTB&E, and not to him individually, the court finds that Mr. Enoch has failed to demonstrate that he qualifies as an "interested party." (*See* Docket No. 43 ¶ 22) Accordingly, he lacks standing to seek a declaratory judgment, and his motion for such must be dismissed. *See* 28 U.S.C. § 2201(a). The court will analyze the remaining claims as if MTB&E alone were the plaintiff.

**II.     The 1998 Living Trust Agreement Validly Conveyed to Shirley Sumner Enoch an Interest in The Stamps Quartet, Inc.**

The plaintiff contests the validity of J.D. Sumner's 1998 Living Trust Agreement, which purports to give to Shirley Sumner Enoch the interest in The Stamps Quartet, Inc. that J.D. Sumner, in 1993, had conveyed to Jason Enoch. (*See* Docket No. 39 at 8-10)  The plaintiff argues that, because 1) the 1993 agreement was still in effect, as the 1998 one failed to revoke it; and 2) the property in the 1993 agreement was to have been the only *res* in the 1998 one, the 1998 agreement was invalid, as "it never received property." (*See id.* at 9)  Accordingly, the plaintiff appears to claim, Shirley Enoch lacks standing to defend ownership of the trademark at issue here because she has no interest in it. (*See id.* at 8-9)  This claim by the plaintiff is without merit.

Tennessee law delineates the methods by which a settlor such as J.D. Sumner may revoke or amend his revocable trust:

> The settlor may revoke or amend a revocable trust:
> (1) By substantial compliance with a method provided in the terms of the trust; or
> (2) If the terms of the trust do not provide a method or the method provided in the terms is not expressly made exclusive, by:
> > (A) A later will or codicil that expressly refers to the trust or specifically devises property that would otherwise have passed according to the terms of the trust; or
> > (B) Any other method manifesting clear and convincing evidence of the settlor's intent.

*See* T.C.A. § 35-15-602(c).

The 1993 trust agreement outlined acceptable methods for both its modification and its revocation. (*See* Docket No. 44, attached 1993 Living Trust Agreement at 1-2) While it is unclear whether the defendants are claiming that the 1998 agreement modified the 1993 agreement or whether it revoked it altogether, the 1998 agreement meets the T.C.A.-required qualifications for both actions.

Only the modification provision of the 1993 agreement "expressly ma[k]e[s] exclusive" the formalities for its employment.  *See* T.C.A. § 35-15-602(c)(2); (Docket No.

7

44, attached 1993 Living Trust Agreement at 1 ("This trust may be amended only by written instrument signed by the Grantor and the Trustee.")). Because J.D. Sumner–as both the grantor and the trustee in this transaction–signed the 1998 agreement, it meets the requirements necessary to modify the 1993 one. (*See* Docket No. 44, attached 1998 Living Trust Agreement at 7) In contrast, the revocation provision in the 1993 agreement does not delineate any required method for its exercise, but rather emphasizes that, while the trust "may be revoked by the Grantor giving notice in writing to the Trustee of the intention to revoke same," the trust is "fully revocable and the Grantor in no way relinquishes any rights to revoke or terminate [it] or any of the terms thereof." (*See* Docket No. 44, attached 1993 Living Trust Agreement at 1) Accordingly, the agreement can be revoked by "any other method manifesting clear and convincing evidence of the settlor's intent." *See* T.C.A. § 35-15-602(c)(2)(B).

Although the plaintiff is correct in its assertion that the 1998 agreement "does not contain any language purporting to revoke the 1993 Living Trust Agreement," this fact is not dispositive. (*See* Docket No. 39 at 9); *see also Waldron v. Commerce Union Bank*, 577 S.W.2d 669, 675 (Tenn. 1978) (finding that a settlor sufficiently manifested her intention to revoke her trust–despite not using explicit language of revocation–when she informed a bank trust officer that she wanted funds transferred from her trust to her checking account whenever her checking account balance ran low). The 1998 Living Trust Agreement clearly evidences J.D. Sumner's intent to at least modify the portion of the 1993 agreement that addressed ownership of the rights, title, and interest in The Stamps Quartet, Inc., if not to revoke the 1993 agreement altogether. The 1998 agreement purports to give all of his interest in The Stamps Quartet, Inc. to Shirley Sumner Enoch.

8

(*See* Docket No. 44, attached 1998 Living Trust Agreement at 3) J.D. Sumner previously had conveyed this same interest to Jason Enoch. (*See* Docket No. 44, attached 1993 Living Trust Agreement at 4) This second conveyance indicates J.D. Sumner's intent to modify the first one, particularly in light of the 1998 agreement's notation that Jason Enoch was to receive part of the interest in the event of Shirley Sumner Enoch's death. (*See* Docket No. 44, attached 1998 Living Trust Agreement at 3) This notation demonstrates J.D. Sumner's intent to change the principal recipient of this interest from Jason Enoch, in 1993, to Shirley Enoch, in 1998.

Like the settlor in *Waldron*, 577 S.W.2d at 675, J.D. Sumner indicated another use for a specific asset conveyed in his trust. In both cases, such an indication demonstrated the settlor's intent to modify the original trust agreement. *See id.* Accordingly, because the 1998 clause regarding The Stamps Quartet, Inc. took the place of the 1993 clause, the plaintiff's argument that the 1998 Living Trust Agreement was invalid because it lacked *res* is defeated.[7] Shirley Sumner Enoch thus has an interest in The Stamps Quartet, Inc. and, accordingly, standing to pursue the claim at bar.

### III. A Genuine Issue of Material Fact Exists as to Whether the Plaintiff is the Rightful Owner of the Trademark at Issue

The defendants have moved for summary judgment on the plaintiff's pursuit of a declaratory judgment regarding the rightful ownership of "The Stamps Quartet" trademark. Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[7]Because the court finds that the 1998 Living Trust Agreement properly revoked or modified the 1993 agreement, it need not address the validity of Jason Enoch's sale and conveyance of his interest in The Stamps Quartet, Inc. to Shirley Sumner Enoch. (*See* Docket No. 44, attached Sale and Conveyance)

9

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd*., 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary

10

judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49). With this standard in mind, the court turns to an analysis of the plaintiff's interest in the trademark.

The plaintiff alleges that it is the true owner of the trademark in question because, on July 26, 2005, the PTO granted its application to trademark the name "The Stamps Quartet." (*See* Docket No. 39 at 2) The plaintiff acknowledges that the defendants once had a common law trademark in the name (*see id.* at 12), but maintains that they abandoned their rights to it before the PTO granted the plaintiff's application (*see id.* at 15). The defendants counter that they never abandoned their use of the trademark but, rather, have released products bearing the trademark "beginning in 1999 [that] continue to be sold through the internet and other outlets today." (*See* Docket No. 44 at 3) Additionally, the defendants allege that any PTO registration of the trademark by the plaintiff was based on fraud. (*See* Docket No. 44 at 6)

The registration of a trademark on the PTO's principal register serves as *prima facie* evidence of its validity, the registrant's ownership of it, and the registrant's exclusive right to use it. *See* 15 U.S.C. § 1115(a) (2000). This presumption does not preclude another party from challenging the validity of the mark, despite that party's failure to challenge it at the PTO. *See* 15 U.S.C. § 1064. However, the challenger bears the bear the burden of proof on the alleged ground of invalidity, which it must demonstrate by a preponderance of the evidence. *See id.*; 15 U.S.C. § 1064; *Sovereign Order of St. John of Jerusalem, Inc. v. Grady*, 119 F.3d 1236, 1241 (6th Cir. 1997) (evaluating a defendant's claim that the plaintiff had fraudulently registered the trademark upon which it accused the defendant of infringing); *West Fla. Seafood, Inc. v. Jet Rests., Inc.*, 31 F.3d 1122, 1125 (Fed. Cir. 1994); *see also* 15 U.S.C. § 1119 (noting that federal courts have the

11

power to order the cancellation of trademark registrations).

In order to prove that the plaintiff's trademark should be cancelled, the defendants here must demonstrate that (1) they have standing to challenge the mark; and (2) a statutory ground exists that would negate the plaintiff's registration. *See Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 946 (Fed. Cir. 2000) ("In [a case in which a registered mark has been on the principal register for less than five years], any ground that would have prevented registration in the first place qualifies as a valid ground for cancellation."); 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 20:52 (Supp. 2004) ("McCarthy").

One such ground for the cancellation of a trademark is proof that the mark "[c]onsists of or comprises a mark which so resembles a mark . . . previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion . . . ." 15 U.S.C. § 1052. The defendants assert–and the plaintiff does not contest–that they previously used "The Stamps Quartet" in the United States such that they acquired common law rights to the mark. (*See* Docket No. 39 at 12) Because the mark the plaintiff registered is identical to the one the defendants now purport to cancel, confusion presumably would result from both parties' concurrent use. The plaintiff has not disputed this fact. Accordingly, the defendants' efforts to cancel the plaintiff's trademark based on the defendants' prior use of the same mark turn on whether the defendants abandoned the mark.[8]

Typically, the party claiming abandonment is the one who seeks cancellation of another's mark. *West Fla. Seafood, Inc.*, 31 F.3d at 1128. In such cases, "the petitioner seeking cancellation

---

[8] The defendants have not listed their prior use of the trademark "The Stamps Quartet" as one of the grounds for the cancellation of the plaintiff's registration of the mark with the PTO. Because both parties have fully outlined arguments about the defendants' prior use, however, and because such a dispute achieves relevance only under the grounds-for-cancellation rubric, the court will, in the interests of judicial utility, view them as such.

12

bears the burden of proving abandonment by a preponderance of the evidence." *Id.* This case differs, however, from a typical case in which an abandonment allegation has been lodged. Here, the plaintiff's assertion of abandonment is essentially a defense to the defendants' assertion of a prior common law trademark. *See id.* In cases like this, "the party asserting abandonment bears at a minimum a burden of coming forth with some evidence of abandonment." *Id.* (employing this standard where the party defending the registered trademark asserted that the petitioner for cancellation had abandoned it); *see also* McCarthy § 20:53 ("[A] petitioner for cancellation does not bear the burden of negating its abandonment when seeking to prove prior use. Rather, abandonment is a defense to be proven by the registrant.").

Under the Lantham Act, a trademark has been abandoned "when its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127 (defining abandonment). The Act defines "use" of a mark as "the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." *Id.; see also Stilson & Assoc. v. Stilson Consulting Group, LLC*, 129 Fed. App'x 993, 995 (6th Cir. 2005). Thus, "[i]n order for a party to succeed on a claim of abandonment, it must prove the elements of both non-use and intent, *i.e.*, that the other party actually abandoned its mark through non-use and that it intended to do so." *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 575 (6th Cir. 2000). The plaintiff here has met its burden of coming forth with evidence of abandonment such that genuine issues of material fact exist as to whether the defendants intended to abandon their trademark and whether they actually did so through non-use.

A party's intent to abandon its trademark may be inferred from circumstances. 15 U.S.C. § 1127. An intent not to resume use of a trademark "means an intent not to resume use within the reasonably foreseeable future rather than an intent never to assume use." *Blackwood v.*

13

*Blackwood*, No. 3:03-CV-691, 2005 WL 2096857, at *3 (E.D. Tenn. 2005) (unpublished) (internal quotation omitted).  An explicit admission that an entity plans to discontinue use of its mark "effectively abandons the mark."  *Id.* (internal citation omitted).  Here, the plaintiff alleges that the defendants' intent to abandon their trademark was evidenced by Shirley Sumner Enoch's statement in February 1999 that she had "ma[d]e the decision to take the group off the road."  (*See* Docket No. 39 at 13 (quoting Docket No. 28, attached Shirley Sumner Edward Enoch Dep. at 79))  Although Ms. Enoch claimed in her deposition that she intended this statement to refer only to halting the group's performances, as opposed to terminating the defendants' use of the trademark altogether, the additional fact that the defendants failed to oppose the plaintiff's registration of the mark with the PTO–despite having notice of the proceedings–raises a genuine issue of material fact as to whether the defendants intended to abandon the mark.  (*See* Docket No. 28, attached Shirley Sumner Edward Enoch Dep. at 79, 129-30); *see also* McCarthy § 20:78 (noting that a party who opposes the cancellation of a trademark may be able to use acquiescence as a defense if the party moving for cancellation had an opportunity to oppose the registration of the mark, yet failed to do so).

  Additional questions of material fact exist as to the length of time for which the defendants arguably abandoned the trademark "The Stamps Quartet."  Evidence that a party has not used its trademark for three years serves as *prima facie* evidence of abandonment.  15 U.S.C. § 1127; *see also Miller Brewing Co. v. Oland's Breweries, Ltd.*, 548 F.2d 349, 351 (Court of Customs & Patent Appeals Dec, 23, 1976) (applying the statutory abandonment period to a common law trademark).  The plaintiff here claims that, after the defendants released a compact disc and video entitled "The Final Sessions" in 1999, they failed to use their trademark again until 2005, when they released a compact disc entitled "Treasury of Memories."  (*See* Docket No. 39 at 13;  Docket

14

No. 28, attached Shirley Sumner Edward Enoch Dep. at 93 (Ms. Enoch noting that "The Final Sessions was released "maybe at the end of '99 to 2000 and 2001"), 107 (referring to the 1999 release of "The Final Sessions"); Docket No. 44 at 5 (referring to the 2005 release date of "Treasury of Memories"))  The defendants respond that, during the 6-year window between 1999 and 2005, they "[sold] products related to sound recordings, memorabilia, and wearing apparel." (Docket No. 28 at 17)

In support of this claim, the defendants have produced a number of documents that purportedly demonstrate their continuous use of the trademark. (*See, e.g.*, Docket No. 28, attached "Supplemental Internet Offer for Sale" at 1-27)  Evidence exists, however, that third parties–not the defendants–were the actual users of the trademark in many instances. (*See* Docket No. 28, attached Shirley Sumner Edward Enoch Dep. at 132-33 (admitting that she has no association with a foreign-language website that appears to be selling the defendants' products and that was submitted as proof of the defendants' continued use of the trademark (*see* Docket No. 28, attached "Supplemental Internet Offer for Sale" at 5)))  In September 2005, Shirley Sumner Enoch admitted that she had not entered into any booking or promotion agreements since 1998. (*See* Docket No. 28, attached Shirley Sumner Edward Enoch Dep. at 144-45)

Particularly in light of the plaintiff's relatively low burden at this stage of the proceedings, the court finds that it has put forth enough evidence to raise a genuine issue of material fact as to whether the defendants abandoned the trademark  *See West Fla. Seafood, Inc.*, 31 F.3d at 1128 (describing the plaintiff's burden as "at a minimum a burden of coming forth with some evidence of abandonment").  Accordingly, the defendants' argument that the plaintiff's trademark should be cancelled due to the defendants' prior use of the same mark does not render them entitled to summary judgement on the plaintiff's motion for a declaratory judgment.

15

Another statutory ground for cancellation is fraud: someone who opposes a trademark's registration may challenge it "[a]t any time if the registered mark . . . was obtained fraudulently." *See* 15 U.S.C. § 1064(3). The defendants have alleged that the plaintiff's registration of the trademark in question was based on fraud because "Mr. Enoch's application to the USPTO states his first use in commerce to be 1969," while "[i]n deposition, Mr. Enoch states his first use was 1999." (*See* Docket No. 44 at 6) In order to prove that the plaintiff fraudulently registered the mark, the defendants must demonstrate "that [he] made knowingly false or misleading statements in the application. Mistakes resulting from inadvertence or ignorance of the law of trademarks do not give rise to liability for fraud." *See Benton Prod. Enters., Inc. v. Motion Media*, No. 96-6044, 1997 WL 603412, at *3 (6th Cir. Sept. 30, 1997) (unpublished) (internal citation omitted).

Mr. Enoch admitted in his deposition that he submitted to the PTO an envelope addressed to the Stamps Quartet that was dated 1969. (*See* Docket No. 28, attached Edward Enoch Dep. at 90) However, he maintained that he entered this envelope in error. (*See id.* at 89 ("[T]hat was just an accident on my part, an error, as you could say, on my part . . . I've just collected a lot of papers and a lot of things and just gave it out.")) Because a reasonable jury could find that Mr. Enoch's submission of this evidence of his first use was inadvertent, as opposed to knowingly misleading, a genuine issue of material fact exists as to whether the plaintiff's trademark should be cancelled due to fraud in the procurement. *See Schwinn Bicycle Co. v. Murray Ohio Mfg. Co.*, 339 F. Supp. 973, 983 (M. D. Tenn. 1971), *aff'd* 470 F.2d 975 (6th Cir. 1972) (declining to cancel a registrant's trademark on the ground of fraud when the registrant's misleading statements "can reasonably be construed to have resulted from inadvertence or ignorance of the applicable law of trademarks"); *see also In re W.R. Case & Sons Cutlery Co.*, 12 U.S.P.Q.2d 1544, 1546 (Trademark Trial & Appeal Board Aug. 23, 1989) ("a plaintiff does not state a claim for . . . cancellation by merely

16

pleading that the dates of use claimed by an applicant or registrant in its application to register were incorrect").

Accordingly, because genuine issues of material fact exist as to which party is the proper owner of the trademark "The Stamps Quartet," the defendants' motion for summary judgment on the plaintiff's complaint for a declaratory judgment must be denied.

## CONCLUSION

Because Edward Enoch has failed to demonstrate that he qualifies as an "interested party" for the purposes of the Complaint for Declaratory Judgment, he must be dismissed as a plaintiff. Genuine issues of material fact exist, however, as to whether MTB&E, as the remaining plaintiff, is entitled to a declaratory judgment that it is the rightful owner of the trademark in question. Accordingly, the defendants' motion for summary judgment on this claim will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge